# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
### ROCK ISLAND DIVISION

| | |
|---|---|
| JULIE L. W., | ) |
| Plaintiff, | ) ) ) |
| v. | ) )  Case No. 4:24-cv-04141-SLD-RLH |
| FRANK J. BISIGNANO,[1] Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) ) |

## REPORT AND RECOMMENDATION

Claimant Julie L. W. ("Claimant" or "Plaintiff") seeks review of the final decision of Respondent Frank J. Bisignano, Commissioner of Social Security ("Commissioner"), denying Claimant's application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act"). Before the Court are Plaintiff's Brief (doc. 7), Defendant's Brief (doc. 11), and Plaintiff's Reply Brief (doc. 12).[2] This matter has been referred for a report and recommendation. (Text Order dated April 25, 2025). For the reasons stated herein, the Court recommends that Claimant's request to reverse and remand the unfavorable decision of the Defendant be denied.

---

[1] Frank J. Bisignano was appointed as the Commissioner of Social Security on May 7, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, he is substituted for his predecessor as the named defendant in this case.

[2] Citations to documents filed in this case are styled as "(Doc. # at __ )." Citations to the pages within the Administrative Record will be identified by "(R. at __ )." The Administrative Record appears at (doc. 6) on the docket.

**BACKGROUND**

Claimant filed a Title II application for DIB on January 28, 2022, with an alleged amended onset date of February 4, 2019. (R. at 15, 40). Her claims were initially denied upon reconsideration on August 8, 2023, after which she requested a hearing before an Administrative Law Judge ("ALJ"). (R. at 19). On December 12, 2023, Claimant appeared before the ALJ via telephone and testified at the hearing before ALJ Robert Luetkenhaus. (R. at 37–68). ALJ Luetkenhaus also heard testimony from an impartial vocational expert ("VE"), Dr. Darrell Taylor, on that date. (R. at 68–72). No medical expert testified at the hearing; however, there are medical source statements in the record that the ALJ references in his decision. (R. at 23–29). On January 12, 2024, ALJ Luetkenhaus denied Claimant's claim for DIB. (R. at 30). The Appeals Council then denied her request for review on June 26, 2024, rendering the ALJ's decision the final decision of the Commissioner. (R. at 1–3).

In finding Claimant not disabled, the ALJ followed the five-step evaluation process required by Social Security regulations for individuals over the age of 18. *See* 20 C.F.R. § 404.1520(a). At step one, the ALJ determined that Claimant did not engage in substantial gainful activity from her amended alleged onset date of February 4, 2019, through her date last insured of March 31, 2023. (R. at 17). At step two, the ALJ found that Claimant had a severe impairment or combination of impairments as defined by 20 C.F.R. § 404.1520(c). (R. at 17). Specifically, Claimant suffered from diabetes mellitus type II, diabetic neuropathy, diabetic gastroparesis, obesity, residual effects of cerebrovascular accident, right-sided pleural effusion,

depression, anxiety, and adjustment disorder with mixed anxiety and depressed mood. (R. at 17). The ALJ also identified the following non-severe medically determinable impairments: high cholesterol, obstructive sleep apnea, tendinosis of the right shoulder, long haul COVID-19 and pseudobulbar affect. (R. at 17–19).

While Claimant's severe and non-severe impairments were acknowledged, at step three the ALJ determined that they did not meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1, as required under 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. (R. at 19–22). In particular, the ALJ considered Listings 3.02 (chronic respiratory disorders), 5.07 (intestinal failure), 5.08 (weight loss due to any digestive disorder), 11.04 (vascular insult to the brain), 11.14 (peripheral neuropathy), 12.04 (depressive, bipolar and related disorders), and 12.06 (anxiety and obsessive-compulsive disorders), but concluded that Claimant did not meet or medically equal the criteria for those listings. (R. at 19–20).

Additionally, the ALJ considered whether Claimant's mental impairments caused any functional limitations sufficient to satisfy the "paragraph B" criteria and determined that Claimant's impairments did not cause at least two "marked" limitations or one "extreme" limitation. (R. at 20–22). First, in understanding, remembering, or applying information, the ALJ found that Claimant had no more than moderate restrictions, citing hearing testimony and her mental status exam preformed at a psychological consultative examination. (R. at 20). Second, in interacting with others, the ALJ noted that Claimant's "mental status exams in the

treatment records generally showed normal mood and affect, normal speech, cooperative attitude, and normal behavior." (R. at 21).

Next, regarding concentration, persistence, or maintaining pace, the ALJ determined Claimant had a moderate limitation. (R. at 21). The ALJ acknowledged Claimant's reports that "she has difficulty with concentration and completing tasks, needs to re-read written instructions, and needs spoken instructions to be repeated," but ultimately found Claimant's psychological consultative examination reports—showing "good frustration tolerance, attentiveness to tasks, euthymic mood, reactive affect, good eye contact, and cooperative attitude," and "the treatment records also generally showed normal mood and affect, normal speech, cooperative attitude, and normal behavior"—to be more persuasive. (R. at 21). Finally, in adapting or managing oneself, the ALJ determined that Claimant had a mid-limitation, citing Claimant's hearing testimony, her psychological consultative examination, and mental status exams in the treatment records. (R. at 21). The ALJ then considered whether the "paragraph C" criteria were satisfied and concluded they were not. (R. at 21–22).

Before step four,[3] the ALJ determined that Claimant had a residual functional capacity ("RFC") to:

> [P]erform light work as defined in 20 CFR 404.1567(b) except she could occasionally climb ramps, stairs, ladders, ropes and scaffolds; frequently stoop, kneel, crouch and crawl; must avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and hazards such as moving machinery and unprotected heights; and could perform only simple,

---

[3] Before proceeding from step three to step four, the ALJ assesses a claimant's residual functional capacity. *See* 20 C.F.R. § 404.1520(e). "In making this finding, the [ALJ] must consider all of the claimant's impairments, including impairments that are not severe." (R. at 16–17) (citations omitted). "The [residual functional capacity] is the maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008).

4

>routine and repetitive tasks, requiring only simple work related decisions, with few changes in the routine work setting.

(R. at 22). In making these determinations, the ALJ also considered Claimant's testimony and medical evidence, including reports from Dr. Hamersma, Dr. DiFonso, Dr. Keefe, Dr. Nimmagadda, and Dr. Aquino; and Doctors of Osteopathic Medicine Lance D. Real and Tomasz Podobinski. (R. at 27–29). Regarding Dr. Real, who is Claimant's primary care physician, the ALJ found his November 2023 medical findings "unpersuasive because they are not supported by objective medical evidence from the relevant time period prior to the March 2023 date last insured, but rather appear to be primarily based on physical exam findings from several months thereafter," and were "also inconsistent with the current and complete record as a whole, which likewise does not suggest such extensive physical functional limitation prior to the date last insured." (R. at 28). Next, the ALJ found that Dr. Podobinski's January 2023 findings did not "specify the most that the claimant can do on an ongoing function-by-function basis." (R. at 27). The ALJ concluded by noting that "to the extent that [Dr. Podobinski's opinion] suggest[s] an inability to perform light work . . . it [is] unpersuasive because it is not well-supported by this doctor's physical exam findings, which do not suggest greater physical functional limitation," and "is also inconsistent with the current and complete record as a whole, which likewise does not suggest greater physical functional limitation." (R. at 27).

The ALJ found at step four that "[t]ransferability of job skills is not an issue because the claimant does not have past relevant work." (R. at 29). At step five, the ALJ concluded that, considering her age, education, past work experience, and RFC,

5

Claimant is capable of performing work within the national economy and that such jobs exist in significant numbers. (R. at 29–30). Specifically, relying on the VE's testimony, the ALJ identified jobs including a cleaner, hand packer, and production worker. (R. at 30). Therefore, the ALJ determined that Claimant was not disabled under the Act from February 4, 2019, the alleged onset date, through March 31, 2023, the date last insured. (R. at 30).

The Appeals Council declined to review the matter on June 26, 2024, making the ALJ's decision the final decision of the Commissioner and, therefore, reviewable by this Court. (R. at 1–6); *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005). Plaintiff then timely filed the Complaint in this action, seeking judicial review of the ALJ's decision. (Doc. 1).

## LEGAL STANDARD

### I.  ALJ Legal Standard

Under the Social Security Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). Economic conditions, personal factors, financial considerations, and attitudes of the employer are irrelevant in determining whether a plaintiff is eligible for disability. *See* 20 C.F.R. § 404.1566. The establishment of disability under the Act is a two-step process.

First, the claimant must be disabled, as defined under 42 U.S.C. § 423(d)(1)(a). Second, there must be a factual determination that the impairment renders the

6

claimant unable to engage in any substantial gainful employment. *McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980). Prescribed by regulation, the factual determination is made by applying a sequential five-step inquiry. This sequential process requires the ALJ to examine, in order: (1) Whether the claimant is currently engaged in substantial gainful employment; (2) Whether the claimant has a severe impairment; (3) Whether the impairment meets or medically equals the criteria of a listed impairment enumerated in the regulations; (4) Whether the claimant can perform any past relevant work; and (5) Whether the claimant is unable to adjust to other work that exists in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

An affirmative answer at steps three or five leads to a finding that the claimant is disabled. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). A negative answer at any step—other than step three—precludes a finding of disability. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). The burden of proof is on the claimant at steps one through four; however, the burden then shifts to the Commissioner at step five to show the claimant's ability to engage in substantial gainful employment. *See Wilder v. Kijakazi*, 22 F.4th 644, 651 (7th Cir. 2022). "A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review." *Conor B. v. Kijakazi*, No. 20 CV 3342, 2022 WL 4079461, at *3 (N.D. Ill. Sept. 6, 2022).

## II. Judicial Review

The Court's function on review is not to try the case de novo or to supplant the ALJ's findings with the Court's own assessment of the evidence. *See Schmidt v. Apfel*,

201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271 (7th Cir. 1989). Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Judicial review of the ALJ's decision is thus limited to determining whether the ALJ's findings are supported by substantial evidence or based upon an erroneous legal standard. *See Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019).

The Seventh Circuit emphasized that ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024). All that is required is that ALJs "provide an explanation for how the evidence leads to their conclusions that is 'sufficient to allow . . . a reviewing court, to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review.'" *Id.* at 1054 (alteration in original) (quoting *Moore v.*

8

*Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014)). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary"—not the courts. *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). When reviewing for substantial evidence, courts may not "reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination so long as substantial evidence supports it." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021).

## DISCUSSION

Claimant contends that the ALJ erred in evaluating her claim for disability benefits. (Doc. 5). Specifically, Claimant asserts that the ALJ's RFC determination was not supported by substantial evidence. (Doc. 7 at 13). Claimant then argues that "[t]he ALJ did not analyze the opinion of the treating physician, Dr. Lance Real, along with CE Dr. Podobinski's opinion as required." (Doc. 7 at 7). In doing so, Claimant asserts that "these opinions would result in the Plaintiff being paid benefits under the regulations." (Doc. 7 at 7).

In response, the Commissioner contends that the ALJ reasonably considered all the medical evidence and made findings as "least as restrictive as five doctors: examining psychologist Kristy M. Keefe, Psy.D.; state-agency psychologists Richard J. Hamersma, Ph.D., and Margaret DiFonso, Psy.D.; and state-agency physicians Sai Nimmagadda, M.D., and Calixto Aquino, M.D." (Doc. 11 at 1, 4–9). The Commissioner maintains that while "[t]he ALJ was faced with multiple conflicting medical assessments," his RFC determination discredited "the degree of limitation opined by

9

treating physician Dr. Real and consultative examiner Dr. Podobinski because those limitations were inconsistent with the evidence and not supported by their own observations." (Doc. 11 at 17–18). In reply, Claimant argues "that the ALJ 'may not ignore an entire line of evidence that is contrary to the ruling.'" (Doc. 12 at 1) (quoting *Blaire M.P. v. Comm'r of Soc. Sec.*, No. 4:19-CV-04174-JEH, 2021 WL 1602092, at *4 (C.D. Ill. Apr. 23, 2021)).

For the following reasons, the Court recommends that the ALJ's decision be affirmed.

I. **The RFC Assessment**

Claimant argues that the ALJ's RFC determination was not supported by substantial evidence. (Doc. 7 at 13). Specifically, Claimant asserts that "[t]he ALJ simply erroneously formed a light RFC" (doc. 7 at 16), because he "does not include the finding that Plaintiff has moderate limitations with regard to 'concentrating, persisting or maintaining pace'" (doc. 7 at 14); "fails to mention Plaintiffs testimony about migraines, elevating legs or taking Lasix pills since 2022 which causes 15 bathroom visits a day" (doc. 7 at 14–15); and "cherry pick[ed]" Claimant's "June 30, 2022 Function Report" (doc. 7 at 15, 16).

The RFC refers to "the claimant's ability to do physical and mental work activities on a regular and continuing basis despite limitations from [his] impairment." *Moore*, 743 F.3d at 1121. When determining the RFC, an ALJ must incorporate all of a claimant's functional limitations supported by the medical record. *See Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015); *see also Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009) ("In determining an individual's RFC, the ALJ must

10

evaluate all limitations that arise from medically determinable impairments, even those that are not severe, and may not dismiss a line of evidence contrary to the ruling.").

First, Claimant claims the ALJ erred by "not includ[ing] the finding that" she "has moderate limitations with regard to concentrating, persisting or maintaining pace." (Doc. 7 at 14). But, as discussed above, the ALJ acknowledged Claimant's reports that "she has difficulty with concentration and completing tasks, needs to re-read written instructions, and needs spoken instructions to be repeated." (R. at 21). The ALJ also acknowledged Claimant's psychological consultative examination reports, which revealed that Claimant possessed "good frustration tolerance, attentiveness to tasks, euthymic mood, reactive affect, good eye contact, and cooperative attitude," as well as treatment records that "generally showed normal mood and affect, normal speech, cooperative attitude, and normal behavior." (R. at 21). Ultimately, the ALJ found those reports to be more persuasive. (R. at 21). Moreover, in *Pavlicek v. Saul*, 994 F.3d 777, 783 (7th Cir. 2021), the Seventh Circuit held that "a 'moderate' limitation in performing at a consistent pace seems consistent with the ability to perform simple, repetitive tasks at a consistent pace." Following that same logic in *Pavlicek*, the ALJ accepted Claimant's "reports that she typically finishes what she starts, reads often as a hobby, does some light house cleaning, goes grocery shopping in stores and by computer, and can pay bills, count change, handle a savings account, and use a checkbook or money orders." (R. at 21). As such, after factoring in the limitations and Claimants own reports for concentrating, persisting

11

or maintaining pace, the ALJ's RFC concluded that she "could perform only simple, routine and repetitive tasks, requiring only simple work related decisions, with few changes in the routine work setting." (R. at 22). Therefore, the ALJ correctly concluded that Claimant has "moderate limitations with regard to concentrating, persisting or maintaining pace" (doc. 7 at 14), because "a 'moderate' limitation in performing at a consistent pace seems consistent with the ability to perform simple repetitive tasks at a consistent pace." *Pavlicek*, 994 F.3d at 783.

Claimant next argues that the ALJ "fails to mention Plaintiff's testimony about migraines, elevating legs or taking Lasix pills since 2022 which causes 15 bathroom visits a day." (Doc. 7 at 14–15). In doing so, Claimant asserts that "[i]f those issues were included in the RFC, the VE would have found no jobs available." (Doc. 7 at 15). First, the Court agrees that the "ALJ specifically considered that testimony but found that Plaintiff did not set forth medical evidence to establish that migraines were a severe impairment." (Doc. 11 at 13). Specifically, the ALJ stated that "the record does not include documentation from an acceptable medical source diagnosing a primary headache disorder after reviewing the claimant's medical history, conducting a physical exam, and making the diagnosis only after excluding alternative medical and psychiatric causes of the reported symptoms, as required by SSR 19-4p." (R. at 18). The ALJ then went on to state that Claimant "was also prescribed nortriptyline for headaches, which was reportedly helped improve symptoms." (R. at 23). Nevertheless, the ALJ incorporated "claimant's overall physical and mental functioning, including headache symptoms, is fully accounted for in the residual

12

functional capacity, in the assignment of light exertion with additional limitations." (R. at 18).

Next, the Court "will affirm an ALJ's credibility determination so long as the ALJ gives specific reasons for the finding that are supported by the record." *Lovelace v. Barnhart*, 187 F. App'x 639, 645 (7th Cir. 2006). This is because "[a]n ALJ is in the best position to judge a witness's truthfulness, and we will overturn an ALJ's credibility determination only if it is patently wrong." *Id.* at 644. Here, the ALJ acknowledged Claimant's edema and that she "would alternately need to use the bathroom 12 *or more times* per day," however, determined that "the treatment notes demonstrating improvement" contradicts her "allegations of disabling physical functional limitation." (R. at 23) (emphasis added). To that end, the ALJ noted that "[c]are providers prescribed medication for fluid retention," and "in February 2022, care providers noted that the claimant had lost 21 pounds and her le[g] edema had gone significantly down." (R. at 24). *See also* (R. at 1111) (progression notes by Dr. Ozment on May 23, 2022, noting "No clubbing cyanosis or edema is present"); (R. at 1048) ("[Claimant reported] having significant leg edema so Dr. Derian had given her Metolazone 2.5 mg three days last week in additional to Lasix 40 mg daily. She reports she lost 21 lbs with this and leg edema has gone significantly down.").

Simply put, ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell*, 97 F.4th at 1053.

13

Finally, Claimant argues that the ALJ "cherry pick[ed]" Claimant's "June 30, 2022 Function Report" and, thus, committed reversable err. (Doc. 7 at 15, 16). The ALJ however is responsible for evaluating the evidence in the record and resolving conflicting evidence. *See Donahue v. Barnhart*, 279 F.3d 441, 444 (7th Cir. 2002). All that is required is that ALJs "provide an explanation for how the evidence leads to their conclusions that is 'sufficient to allow . . . a reviewing court, to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review.'" *Warnell*, 97 F.4th at 1054 (alteration in original) (quoting *Moore*, 743 F.3d at 1121).

At their core, Claimant's arguments amount to a disagreement with how the ALJ weighed the evidence in the record—Claimant urges the Court to reweigh the evidence itself and find that it supports a conclusion contrary to that of the ALJ. But "this would be no less than substituting [the Court's] judgment for that of the ALJ's, an impermissible step." *Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022); *see also Gedatus*, 994 F.3d at 901 ("This is not a case where an ALJ ignored evidence contrary to his conclusion. Despite her colorable arguments, we will not reweigh the evidence."). Even if this Court would weigh the evidence differently than the ALJ, the decision of the ALJ must be affirmed if the ALJ's discussion is sufficient to allow the Court to discern the ALJ's reasoning, which is all that was required. *See Warnell*, 97 F.4th at 1053 ("Time and time again, we have emphasized that social-security adjudicators are subject to only the most minimal of articulation requirements. An ALJ need not address every piece or category of evidence identified by a claimant,

14

fully summarize the record, or cite support for every proposition or chain of reasoning."). Here, the ALJ provided a logical roadmap for how he weighed the evidence before him and how he reached his ultimate conclusions; therefore, the ALJ should be affirmed.

## II. Evaluation of the Medical Opinions

Claimant disputes the ALJ's evaluation of the opinions from treating physician Dr. Real and consulting examiner Dr. Podobinski, arguing that the ALJ failed to consider key supporting records from the relevant period and improperly discounted evidence of her functional limitations. (Doc. 7 at 7–17; Doc. 12 at 1–3). In response, the Commissioner contends that the ALJ's decision was supported by substantial evidence, highlighted Claimant's improvement with treatment, considered her activities of daily living, and appropriately weighed the medical opinion evidence. (Doc. 11 at 1, 10–21).

Here, Claimant's argument actually pertains to the ALJ's treatment of Dr. Real; Claimaint's references to Dr. Podobinski are made only in passing, and solely in relation to Dr. Real. *See* (Doc. 7 at 11) ("The ALJ fails to discuss the fact that the consulting exam and report by Dr. Tomasz Podobinski supports and is consistent with Dr. Real's opinion."), and thus, are insufficient.[4] Nevertheless, the ALJ properly evaluated Dr. Real and Dr. Podobinski's opinion as required under 20 C.F.R. § 404.1520c(c). Under this regulation, the ALJ "will not defer or give any specific

---

[4] *See Hernandez v. Cook Cnty. Sheriff's Off.*, 634 F.3d 906, 913 (7th Cir. 2011) ("It is well established in our precedents that 'skeletal' arguments may be properly treated as waived, as may arguments made for the first time in reply briefs." (citations omitted)).

15

evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a). An ALJ is instead required to "articulate . . . how persuasive [they] find all of the medical opinions and all of the prior administrative medical findings in [a claimant's] case record." 20 C.F.R. § 404.1520c(b). Factors to be considered in this evaluation include supportability, consistency, relationship with the claimant, specialization, and other factors that tend to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. §§ 404.1520c(a), (c). Supportability and consistency are the two most important factors. 20 C.F.R. § 404.1520c(a); *see* 20 C.F.R. § 404.1520c(c)(2) ("The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."). An ALJ's decision must explain how they considered the factors of supportability and consistency, but an ALJ is not required to explain how they evaluated the other factors. 20 C.F.R. § 404.1520c(b)(2). The Court will "uphold all but the most patently erroneous reasons for discounting a treating physician's assessment." *Stepp v. Colvin*, 795 F.3d 711, 718 (7th Cir. 2015) (citation modified).

Claimant asserts that if "the opinions of treating physician Dr. Real and Consulting Examiner Dr. Podobinski were given proper weight, . . . it is evident [she] cannot perform light or even sedentary work on an on-going basis." (Doc. 7 at 17). But Claimant's reliance on the assumption that the controlling weight paradigm still

16

applies is misplaced. (Doc. 7 at 12, 17). The regulation, 20 C.F.R. 404.1520c(a) ("[The ALJ] will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from your medical sources."), instead emphasizes supportability and consistency over hierarchy. And the ALJ's opinion did just that—it underscored and relied upon the supportability and consistency of the opinions of state agency physicians and psychologists (Drs. Nimmagadda, Aquino, Hamersma, DiFonso), and upon the consultative psychological examiner (Dr. Keefe), while finding the more restrictive opinions of treating physician Dr. Real and consultative physician Dr. Podobinski unsupported, inconsistent with the record, and therefore unpersuasive. (R. at 22–29).

More pointedly, the ALJ applied the appropriate factors and properly evaluated and gave little weight to the opinions of Drs. Real and Podobinski. The ALJ also correctly assessed the relevant factors under 20 C.F.R. § 404.1520c(a), (c)(1)–(5)—supportability, consistency, the physicians' relationship with Claimant, specialization, and other factors that tend to support or contradict a medical opinion or prior administrative medical finding. *But see* 20 C.F.R. § 416.920c(b)(2) (stating that the ALJ "may, but [is] not required to, explain how [they] considered the factors in paragraphs (c)(3) through (c)(5)").

First, the ALJ described the findings of Dr. Podobinski's January 7, 2023, internal medicine consultative examination and then explained that his "opinion [did] not specify the most that the claimant can do on an ongoing function-by-function basis." (R. at 27). The ALJ explained that Dr. Podobinski's opinion was inconsistent

17

with the record, "which likewise does not suggest greater physical functional limitation"—including "the physical exam findings in the treatment records demonstrating normal gait and good motor strength, as well as the treatment notes demonstrating improvement of respiratory and digestive symptoms and edema with treatment." (R. at 27); *see also* (R. at 2258) ("Claimant otherwise has no overt evidence of acute or chronic physical illness and claimant's mental status was otherwise stable today."). The ALJ explained that Dr. Podobinski suggested that Claimant was unable to "perform light work with occasional climbing, frequent stooping, kneeling, crouching, and crawling" and that Claimant experienced "additional pulmonary irritant and workplace hazard limitations." (R. at 27). The ALJ concluded that Dr. Podobinski's opinion was "unpersuasive because it [wa]s not well-supported by [his own] physical exam findings, which [did] not suggest greater physical functional limitation." (R. at 27). *See also Conor B.*, 2022 WL 4079461, at *6 (discussing the supportability and consistency factors, and upholding the ALJ's evaluation of the medical opinions where "the ALJ explained that [the treating physician's] opinions were not consistent with his own treatment notes").

Similarly, as mentioned, the ALJ found Dr. Real's November 2023 medical findings "unpersuasive because they are not supported by objective medical evidence from the relevant time period prior to the March 2023 date last insured, but rather appear to be primarily based on physical exam findings from several months thereafter." (R. at 28). In fact, Dr. Real's opinion was signed on November 5, 2023. (R. at 3565). The ALJ then determined that Dr. Real's opinion was inconsistent with the

18

record, which "does not suggest such extensive physical functional limitation prior to the date last insured." (R. at 28).

Claimant argues that the ALJ must explain his reasoning and cannot ignore entire lines of evidence. (Doc. 7 at 9); (Doc. 12 at 1). The ALJ, however, did account for the record evidence and explained his opinion in a manner that articulated a clear and logical decision, which is supported by substantial evidence. *Donahue v. Barnhart*, 279 F.3d 441, 444 (7th Cir. 2002). Moreover, Claimant seems to acknowledge the ALJ cited improvement with treatment and daily activities but dismisses these findings without explanation as to why the ALJ's reliance on such evidence is patently wrong or unsupported, especially where the record contains mixed findings. (Doc. 7 at 11–12). For example, Claimant protests that current law is "illogical and unfair" (doc. 7 at 12); but does not attempt to grapple with the ALJ's findings, cited improvements, or explain why the functional activities cannot support the ALJ's more restrictive RFC, or why the state-agency opinion evidence is not substantial. (Doc. 7 at 7–13). Claimant's assertion that the ALJ did not support his decision to discount Dr. Real and Dr. Podobinski's opinions with substantial evidence is therefore misplaced.

Finally, this is simply a request to reweigh the evidence, which this Court cannot and will not do. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004) ("Weighing conflicting evidence from medical experts, however, is exactly what the ALJ is required to do. And we may not re-weigh the evidence." (citation omitted)). An ALJ must consider the entire record but is not required to rely entirely on a particular

19

physician's opinion or choose between the opinions of any of Claimant's physicians. *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007). Here, that is exactly what the ALJ did in weighing all of Claimant's Doctor's opinions along with his testimony and the other record evidence. *See Donahue*, 279 F.3d at 444 (noting that the ALJ is responsible for evaluating the evidence in the record and resolving conflicting evidence); 20 C.F.R. § 404.1520c. Therefore, the ALJ did not err in evaluating the opinion evidence of Dr. Real and Dr. Podobinski's opinions.

Accordingly, the Court recommends that the ALJ's determination be affirmed.

## CONCLUSION

For the reasons set forth above, it is recommended that the Commissioner's decision denying Claimant's application for supplemental security income be affirmed. The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk within fourteen (14) days after service of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1). Failure to object will constitute a waiver of objections on appeal. *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999); *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995).

SO RECOMMENDED.

Entered this 29th day of August 2025.

                                                s/ Ronald L. Hanna
                                                    Ronald L. Hanna
                                         United States Magistrate Judge